FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.
★ SEP 0 6 2012 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MO FUYSUL,

                Plaintiff,

   -against-

MICHAEL J. ASTRUE, Commissioner of Social Security,

                Defendant.
-------------------------------------------------------------X

**MEMORANDUM & ORDER**

10-CV-1445 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Mo Fuysul ("Fuysul") brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c), seeking judicial review of the Social Security Administration's ("SSA") decision that he is not disabled and therefore not entitled to supplemental security income ("SSI"). Fuysul argues that the SSA made errors at every level of the administration's analysis, and that, as a result, he has been improperly denied benefits. The Commissioner of Social Security has filed a motion for remand of this case to the SSA for further proceedings due to errors committed by Administrative Law Judge ("ALJ") Manuel Cofresi. Fuysul has filed an opposition to the Commissioner's motion that, read liberally, asks for the court to determine that he is disabled. For the reasons set forth below, the Commissioner's motion is GRANTED, Fuysul's request is DENIED, and this case is REMANDED to the SSA for further proceedings.

I. **BACKGROUND**

Fuysul was born in Bangladesh on November 11, 1977. (Admin. R. (Docket Entry # 7) at 26, 37.) Fuysul immigrated to the United States in 1996 and is a legal alien. (Id. at 26.) After coming to the United States, Fuysul worked as a waiter and, most recently, as a kitchen steward at a hotel, a job that involved cleaning and heavy lifting. (Id. at 88.) In 2004, Fuysul resigned

1

from working as a kitchen steward because when he woke up one day his neck was "too stiff" and he was unable to "move [his head] right or left." (Id. at 29–30.) Fuysul asked his employer for another position that did not require lifting, but the hotel was unable to grant his request. (Id. at 30.)

On September 24, 2007, Fuysul filed an application for SSI benefits, claiming that he had been disabled since April 1, 2004. (Id. at 63.) He alleged that his impairments prevented him from sitting, standing, climbing stairs, driving, or sleeping for long periods of time, and that when he "do[es] any of th[ese] activities [he] get[s] joint pain, stiffness, neck pain and lower back pain, numbness and pain in [his] extremities. (Id. at 87.) The SSA denied Fuysul's application on January 16, 2008. (Id. at 38.)

Fuysul requested a hearing on his application, and ALJ Manuel Cofresi held a hearing on the application on April 1, 2009. (Id. at 13.) Fuysul was the only person who testified at the hearing. (Id. at 25–36.) On June 26, 2009, the ALJ issued a written decision concluding that Fuysul was not disabled within the meaning of the Social Security Act. (Id. at 7–19.)

To reach this conclusion, the ALJ applied the SSA's "five-step sequential evaluation process for determining whether an individual is disabled." (Admin. R. at 13 (citing 20 C.F.R. § 404.1520(a) (2003)).) The ALJ found in the first three steps that: (1) Fuysul had "not engaged in substantial gainful activity since April 1, 2004;" (2) Fuysul suffered from "severe impairments," including "cervical degenerative disc disease with cervical radiculopathy and lumbar degenerative disc disease;" and (3) Fuysul did not suffer from an impairment that met or equaled a listed impairment. (Id. at 15.)

At step four, the ALJ found that Fuysul had "the residual functional capacity to perform the full range of light work" because he was able to "lift[] and carry[] twenty pounds

occasionally and ten pounds frequently . . . walk or stand for six hours and sit for two hours in an eight-hour work period."[1] (Id. at 19.) Based on that residual functional capacity, the ALJ found that Fuysul was "unable to perform past relevant work," As Fuysul's past work was characterized as "heavy." (Id. at 21.) However, at step five, the ALJ concluded that there were "jobs that exist[ed] in significant numbers in the national economy that [Fuysul] c[ould] perform." (Id.) Accordingly, the ALJ concluded that Fuysul was not disabled within the meaning of the Social Security Act and denied Fuysul's appeal of the SSA's initial rejection of his application. (Id. at 22.)

On October 22, 2009, Fuysul requested that the SSA Appeals Council review the ALJ's unfavorable decision. (Id. at 8.) The Appeals Council denied Fuysul's request for review on February 5, 2010, the ALJ's decision became the final decision of the Commissioner. (Id. at 4.)

On March 29, 2010, Fuysul filed the instant Complaint seeking judicial review, pursuant to 42 U.S.C. §§ 405(g) and 1383(c), of the SSA's decision that he was not disabled and therefore not entitled to SSI. (Compl. (Docket Entry # 1).) The Commissioner filed a motion seeking remand for further proceedings due to errors committed by the ALJ. (See Def. Mem. (Docket Entry # 14) at 1.) Fuysul opposed the Commissioner's motion, stating that the SSA committed errors of analysis at every level of review. (Pl. Opp'n to Def. Mot. (Docket Entry # 13) ¶ 3.) Fuysul also offered additional evidence of his disability and appears to urge this court to determine that he is disabled. (Pl. Ltr. (Docket Entry # 17) at 1.)

---

[1] The Second Circuit has described "light work" as follows:

> The full range of light work requires intermittently standing or walking for a total of approximately 6 hours of an 8-hour workday, with sitting occurring intermittently during the remaining time. A person who is deemed able to perform light work is also capable of doing sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (citing 20 C.F.R. § 404.1567(b) (2006)).

3

## II. LEGAL STANDARDS

### A. Review of Final Determinations of the Social Security Agency

"The role of a district court in reviewing the Commissioner's final decision is limited." Pogozelski v. Barnhart, No. 03-CV-2914 (JG), 2004 WL 1146059, at *9 (E.D.N.Y. May 19, 2004). "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998); see also Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). Thus, as long as (1) the ALJ has applied the correct legal standard and (2) its findings are supported by evidence that a reasonable mind would accept as adequate, the ALJ's decision is binding on this court. See Pogozelski, 2004 WL 1146059, at *9.

### B. Determination of Disability

"To receive federal disability benefits, an applicant must be 'disabled' within the meaning of the [Social Security] Act." Shaw, 221 F.3d at 131; see also 42 U.S.C. § 423. A claimant is "disabled" within the meaning of the Act if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be of "such severity that [claimant] is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

The SSA has promulgated a five-step procedure for determining whether a claimant is "disabled" under the Act. See 20 C.F.R. § 404.1520(a)(4). In Dixon v. Shalala, 54 F.3d 1019 (2d Cir. 1995), the Second Circuit described this five-step analysis as follows:

> The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied.
>
> If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, benefits are denied.
>
> If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" . . . of the social security regulations. These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits.
>
> If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's "residual functional capacity," i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied.
>
> If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." If not, benefits are awarded.

Id. at 1022 (citations omitted).

The ultimate "burden is on the claimant to prove that he is disabled." Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000) (alterations omitted). But if the claimant shows at step four that his impairment renders him unable to perform his past work, there is a limited shift in the burden of proof at step five that requires the Commissioner "to show there is other gainful work in the national economy that the claimant could perform." Id.

5

In making the determinations required by the Social Security Act and the regulations promulgated thereunder, "the Commissioner must consider (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience." Pogozelski, 2004 WL 1146059, at *10 (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)). Moreover, "the ALJ conducting the administrative hearing has an affirmative duty to investigate facts and develop the record where necessary to adequately assess the basis for granting or denying benefits." Id. That duty is "heightened" when the claimant appears at the hearing pro se. Ericksson v. Comm'r of Soc. Sec., 557 F.3d 79, 83 (2d Cir. 2009).

## III. DISCUSSION

### A. Errors in the Proceedings Below

The Commissioner's response to Fuysul's action asks this court to remand Fuysul's disability claim to the SSA for further proceedings. (Def. Mem. at 3.) The Commissioner argues that, though there is substantial evidence in the record for the ALJ's decision, the ALJ committed two errors: (1) he did not fully develop the record; and (2) he improperly described a federal worker as a physician which he then relied on as a medical source. (Id. at 11–12.) The Commissioner also argues that a remand for calculation of benefits is an improper remedy because the record is not completely developed. (Id. at 13.)

The ALJ first erred when he concluded, based on a lack of reported medical treatment history in 2008 and 2009, that Fuysul had not received medical treatment during that time. (Admin. R. at 19.) The ALJ stated that the "record as a whole does not reflect treatment during the years 2008 and 2009, which also reinforces the statement that the claimant's symptoms are

6

not disabling." (Id.) However, the ALJ failed to inquire any further into this gap in the record, an exercise which may have revealed alternative explanations. For example, the claimant may have been unable to afford medical care during those years or merely did not realize that he had failed to present the evidence of treatment for these years.

The ALJ has an affirmative duty to develop the record as necessary to "adequately assess the basis for granting or denying benefits." Pogozelski, 2004 WL 1146059, at *10; see also Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) ("It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must [him]self affirmatively develop the record" in light of "the essentially non-adversarial nature of a benefits proceeding." (citations and quotation marks omitted)). Moreover, this affirmative duty is "heightened" when, as here, the claimant appears at the hearing pro se. Ericksson, 557 F.3d at 83. The ALJ's failure to develop the record for 2008 and 2009, and his reliance on that gap in his denial of benefits was, therefore, reversible legal error. Cf. Shaw, 221 F.3d at 131 ("A district court may set aside the Commissioner's determination . . . if the decision is based on legal error.").

The court also agrees with the Commissioner that the ALJ committed error when he stated that B. Ramos, a State Disability Determinations Services Analyst, was a physician, and relied upon B. Ramos' opinion in support of the conclusion that Fuysul could engage in light work. (Admin. R. at 20; Def. Mem. at 12.) When an ALJ considers the findings made by State agency consultants and analysts, such as B. Ramos, he or she must consider factors such as the consultant's medical specialty, other supporting evidence in the case record, supporting explanations provided by the consultant, and other relevant factors. 20 C.F.R. § 404.1527(e)(2)(ii) (2012). Though the ALJ did appear to consider the fact that B. Ramos was

7

"non-examining,"[2] B. Ramos' opinion ought to have been evaluated with the fact that he is a "lay analyst," not a physician, in mind. (Def. Mem. at 12.)

These two errors are sufficient to warrant a remand of Fuysul's claim for further proceedings. See 42 U.S.C. § 405(g) (2006) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."); Rosa v. Callahan, 168 F.3d 72, 79–80 (2d Cir. 1999) (noting that "numerous gaps in the administrative record . . . should have prompted the ALJ to pursue additional information regarding Rosa's medical history," and concluding that the ALJ's failure to develop the factual record was legal error). However, Fuysul's opposition, read liberally, instead asks the court to find that he is disabled; the court turns now to Fuysal's argument.

### B. Remand for Further Proceedings is the Proper Remedy

It is appropriate for a District Court to reverse the ALJ's determination that a claimant is not disabled and order payment of benefits "when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." Hartnett v. Apfel, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998) (internal quotation marks omitted) (quoting Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980)). However, it is not normally the District Court's role to "determine *de novo* whether [the claimant] is disabled." Cage v. Comm'r of Soc. Sec., 2012 WL 3538264 at *3 (2d Cir. Aug. 17, 2012) (internal quotation marks omitted) (quoting Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998)); see also Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) ("It is not the function of a reviewing court to decide *de novo* whether the

---

[2] At least, the court concludes the ALJ acknowledged that Ramos was a non-examining consultant. The ALJ actually stated that "Dr. Silver-Zucker" was non-examining; however, there is no other reference to a doctor with that name in the decision, and the paragraph that contains that reference follows immediately the paragraph discussing Ramos, and so the court concludes that the reference to Silver-Zucker is a typographical error. (Admin. R. at 20.)

8

claimant was disabled."). The court has already concluded that the administrative record must be expanded and thus necessarily that remand for further proceedings, particularly additional evidentiary proceedings, is the proper remedy. Moreover, the fact-finder in this case must consider an expanded record and properly evaluate the opinion of the lay analyst Ramos in the context of a record that includes the medical opinions of five treating physicians in the span of five years, all with varying assessments of the degree to which Fuysul's injury is disabling within the range of not disabled to totally disabled.[3] Because the record lacks "persuasive proof of disability," and because the that record requires both expansion and careful evaluation that should be done by the administrative process, it is beyond the scope of this court's review to make a determination of Fuysul's disability and remand solely for an award of benefits. See Hartnett, 21 F. Supp. 2d at 221.

Fuysul argues that the repeated rejection of his SSI claim, first by the SSA's initial review, next in the ALJ's decision, and finally by the Appeals Council's denial of review, were all the result of error and together indicate that his case should not be remanded for further proceedings. (Pl. Opp'n to Def. Mot. ¶ 3.) However much Fuysul may disagree with the initial determinations and the Appeals Council's decision, this court may only review the final decision of the agency. The Appeals Council denied Fuysul's request for review of his claim (Rec. at 1), making the ALJ's opinion the final decision of the SSA. Sims v. Apfel, 530 U.S. 103, 106-07

---

[3] The medical history as explored by the ALJ contains opinions from five of Fuysul's treating physicians, listed in sequential order: Dr. Kaisman, Dr. Turner, Dr. Carrero, Dr. Faierman, and Dr. Calvino. (Admin. R. at 17–18.) Dr. Kaisman found that Fuysul had limited range of motion of the cervical and lumbar spine with muscle spasms in the upper and lower back, but did not identify any motor loss of the upper and lower extremities. (Id. at 17.) Dr. Kaisman also found that Fuysul's condition improved with treatment. (Id.) Dr. Turner documented additional symptoms including dizziness and headaches. (Id.) Additionally, Dr. Turner's reports state that Fuysul experienced consistent pain which was almost completely debilitating. (Admin. R. at 48.) Dr. Carrero found similarly to Dr. Kaisman except that Fuysul was unresponsive to treatment. (Admin. R. at 17–18.) Dr. Faierman found that Fuysul had limited range of motion in the cervical spine and decreased sensation to light touch in the upper extremities but that Fuysul retained full muscle strength and had normal tendon reflexes. (Id. at 18.) Finally, Dr. Calvino did not find any symptoms consistent with disabling pain. (Id.) Dr. Calvino also found that Fuysul walked with a normal gait and was capable of a full range of motion for the cervical, shoulders, and lumbar spine. (Id.)

(2000) ("The Social Security Act provides that [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, . . . may obtain a review of such decision by a civil action in federal district court. SSA regulations provide that, if the Appeals Council grants review of a claim, then the decision that the Council issues is the Commissioner's final decision. But if, as here, the Council denies the request for review, the ALJ's opinion becomes the final decision.") Consequently, the alleged errors of the other levels of administrative review do not affect this court's review of Fuysal's claim.

Additionally, Fuysul has submitted medical records indicating treatment in December of 2010 and June of 2011 upon which he would like the court to base its decision. (Pl. Ltr. at 1–5.) However, the existence of additional evidence only heightens the need for a remand, as it is not the District Court's role to fill gaps in the record or to weigh new evidence of a claimant's disability against the existing record.

## IV.  CONCLUSION

For the foregoing reasons, the Commissioner's Motion is GRANTED and this case is REMANDED to the Commissioner for expansion and evaluation of the record, including the time period of years 2008 to 2011 and the new evidence Fuysul submitted to the court, and a reevaluation of the record in light of the fact that one consultant was a state agency disability analyst, not a physician. The Clerk of Court is directed to close this case.

SO ORDERED.

                                                                                  s/Nicholas G. Garaufis

Dated: Brooklyn, New York                              NICHOLAS G. GARAUFIS
       September _5_, 2012                                  United States District Judge